In the Matter of the Application of WILLIAM BALDWIN, an Alleged Incompetent, by MARY LUCIA BALDWIN, His Guardian ad Litem, Respondent, for a Mandamus Order against WILLIAM J. TIFFANY, Superintendent of Kings Park State Hospital, and FREDERICK W. PARSONS, State Commissioner of Mental Hygiene, Respondents, Appellants.*— Peremptory order of mandamus modified by providing that the alleged incompetent be received at a State hospital and afforded such treatment and hospitalization therein as may be necessary with regard to his condition pending his acceptance by the State of Georgia, in which he has a legal residence, instead of the provision that said incompetent be received into the Kings Park State Hospital as a resident of the State of New York and afforded such treatment and hospitalization therein for such length of time as is necessary in regard to his condition and as is usual in like cases. As so modified, the order is affirmed, without costs. Whether the commitment proceedings were an adjudication of the incompetency of William Baldwin (*Sporza v. German Savings Bank*, 192 N. Y. 8)

---

* Revd., 250 N. Y. 489.

or not, as might be urged from *Finch* v. *Goldstein* (245 id. 300), requires no decision here, nor is it necessary to determine whether the word " residence," used in the Mental Hygiene Law, means domicile or residence as the latter term is technically used. Although subsequent to September, 1926, William was actually within the State for over a year, exclusive of time spent in public or private institutions, he was not continuously here for a year during any period of time between the time he first came and the time of the application in this proceeding. He was removed from the State after he had been here the first time for a little over seven months, exclusive of time spent in a State hospital, and remained away for about two months. After his return to the State and when he was here for about five months and nineteen days, exclusive of time spent in a State hospital, he was again removed and remained away for about two months, and was again in the State about fifteen days, exclusive of time spent in the hospital and a private institution. The action of the authorities in removing him from the State each time brought to an end his residence in the State. In effect, he had been banished from the State each time that he was returned to Georgia. He has never been a " resident " of the State for a period of one year exclusive of time spent in a public or private institution within the meaning of the term " resident " in the Mental Hygiene Law.† The situation is one of distress for the incompetent and his family. There is no one in Georgia who seems to be able or willing to arrange for his commitment in that State. Under such circumstances it would become the moral, if not legal, duty of the State authorities, if he be sent to Georgia again, to arrange for his commitment there, as if he had no friends or relatives in that State. So the incompetent should have had care and treatment in Central Islip State Hospital, " for humane reasons " (Mental Hygiene Law, § 60), until his acceptance in the State in which he has a legal residence. It appears that the State authorities turned the incompetent over to his mother, who says she is able to pay for a short period only for his care in a private institution. She received her son under the threat that he would again be sent to Georgia. Under such circumstances, the situation is the same as if he were about to be removed from the hospital to Georgia. Lazansky, P. J., Rich, Kapper and Carswell, JJ., concur; Hagarty, J., dissents, with the following memorandum: The petitioner, respondent, had given up his legal residence in the State of Georgia, and when New York returned him to Georgia it was not under any arrangement with the State authorities of Georgia for his commitment there. In my opinion, the return of the incompetent by New York under the circumstances disclosed by this record, did not break the continuity of his residence in the State of New York.

† See Mental Hygiene Law, § 2.— REP.